## ADELINE W. LEONHARDT *v.* THEODORE LEONHARDT ET AL.

[No. 31, October Term, 1930.]

*Decided January 14th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Bernard J. Flynn,* for the appellant.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order dismissing the bill of complaint, filed by the appellant, Adeline W. Leonhardt, administratrix of Frank Kuerschner, deceased, against Theodore Leonhardt, the appellee, and the Savings Bank of Baltimore, in which it was alleged: "That on or about the fourth day of December, 1928, the said Frank Kuerschner had on deposit in a savings account in and with the Savings Bank of Baltimore, the sum of four thousand dollars, and on that day, while the said Frank Kuerschner was physically and mentally unable to withdraw said funds, the defendant,

Theodore Leonhardt, on what purported to be an order signed by mark of said Frank Kuerschner, obtained a withdrawal of said funds from said defendant, the Savings Bank of Baltimore, and a redeposit of the same in the name of said Frank Kuerschner, in trust for himself and said Theodore Leonhardt, joint owners, subject to the order of either, balance at the death of either to belong to the survivor."

Both Theodore Leonhardt and the Savings Bank of Baltimore answered the bill. Leonhardt in his answer denied the allegations that Kuerschner, at the time of the execution of the order upon which funds were withdrawn from the bank, was physically and mentally unable to execute such order, or that the order was fraudulently procured by him. The bill as against the Savings Bank of Baltimore was dismissed by the plaintiff. Thereafter the case proceeded against Leonhardt alone, and the answer of the bank is not in the record.

At the beginning of the year 1928, and for some time prior thereto, Frank Kuerschner with his family, consisted of himself, wife, Johanna, Adeline Leonhardt, the appellant, his adopted daughter, and her son, Harold, then about grown, lived on Rutland Avenue, in the City of Baltimore. Because of some difficulty with his daughter and her son, they left his home, leaving him alone with his wife. At this time Mr. Kuerschner was about eighty years of age, and his wife only a few years younger. In February, 1928, they moved to the home of Theodore Leonhardt, a nephew of Mrs. Kuerschner, and there resided until on or about the 29th day of July of the same year, when Mrs. Kuerschner, while crossing one of the streets of the city, was struck by an automobile, and as a result thereof died on the 6th day of September following. Thereafter Frank Kuerschner lived with Leonhardt and his wife until his death, on the 6th day of December, 1928, after an illness of about two weeks, during which time he was attended by Dr. George I. Young, who first made daily visits to his home, but later called to see him twice each day.

At the time of the death of Mrs. Kuerschner, there was a deposit in the Savings Bank of Baltimore in the name of Frank and Johanna Kuerschner, which was thereafter, on

September 27th, 1928, withdrawn by Kuerschner and the account closed. Whereupon, on the same day, an account was opened at the bank by Frank Kuerschner with a deposit of $4,783.42. This account was thereafter on October 1st, 1928, credited with $15.93 interest, and on October 2nd there was a withdrawal therefrom by Kuerschner of the sum of $499.35. No other withdrawals were made until December 4th, 1928, when there was withdrawn therefrom the two sums of $150 and $4,178.67, upon the two orders of Frank Kuerschner, directing the bank to pay said sums to Theodore Leonhardt, or bearer. These orders were executed by Kuerschner making his mark thereto, and were witnessed by Dr. Young. The first was dated December 3rd, and the second December 4th. Upon the withdrawal of said sums, $150 was paid over to Kuerschner, and the sum of $4,178.67 was redeposited in said bank "in the name of Frank J. Kuerschner in trust for himself and Theodore Leonhardt, joint owners, subject to the order of either, balance at the death of either to belong to the survivor." This last deposit was pursuant to an order addressed to the Savings Bank of Baltimore, signed by Frank J. Kuerschner by his mark thereto, and witnessed by Lewis J. Langham, directing said bank to so enter the deposit upon its books. Beneath this order, on the same sheet, is a certificate, dated December 3rd, 1928, signed by Dr. Young, certifying that "Frank Kuerschner, the owner of savings account book No. 753282, was duly known to him, was of sound and disposing mind and made his mark" to said order, which was witnessed by him. On December 6th, after the death of Kuerschner, the account so opened was closed by the withdrawal of the fund by Theodore Leonhardt.

The sole question in this case is one of fact, and that is, was Frank Kuerschner, at the time of the execution of the order of December 4th, upon which the balance of the fund was withdrawn from the bank, mentally able to execute the same?

It is true that Kuerschner was an old man and was the recipient for a short time only of the favors and kindness of

Leonhardt and his wife. Neither Leonhardt nor his wife was related to him by blood, though Leonhardt was the nephew of Kuerschner's wife. So far as the record discloses, Kuerschner had no blood relatives. The appellant, whom he had raised from childhood, wrongfully treated him, as he thought, and he became more or less bitter in his feelings towards her, as well as her son, who, as the record discloses, used violent language to him before he and his mother left the home of Kuerschner. The record clearly shows that there was a decided estrangement between Kuerschner and his adopted daughter, which lasted during the remainder of his life, with no effort and apparently with no desire on her part to effect a reconciliation. Therefore, it was not unnatural that he should have felt kindly towards Leonhardt and his wife, who, as the evidence discloses, were thoughtful and considerate of him, and who did much to add to his comfort and pleasure in his last days while with them.

It was not to Leonhardt that Kuerschner first suggested the withdrawal of his money from bank. On December 2nd, when not confined at all times to his bed, he asked Dr. Young to go to the bank and get for him $150. In reply thereto he was told by the doctor to get Mr. Leonhardt to go to the bank and get the necessary paper, which he was to sign and have Mr. Leonhardt get the money. This was because the doctor was busy and had not the time to attend to it. When he suggested that he get Mr. Leonhardt to attend to it, Mr. Kuerschner said, "Well, I want him to have it anyway, he says, that is the way I want it." As to the execution of the orders, Dr. Young testified that thereafter, on December 3rd, upon a visit to the home of Kuerschner, he was handed a paper, by whom he did not recall, the blanks of which were not filled in, and this he did himself, making the amount $150, as he had been requested by Mr. Kuerschner. Mr. Kuerschner then signed it, by making his mark, and "I witnessed the execution of the paper." When asked why Kuerschner made his mark, the doctor said his hands were very trembly. On the subsequent day, December 4th, the second paper was handed to Dr. Young. Unlike the first, the

blanks were filled in, and there was nothing to do but to execute it, which was done by Mr. Kuerschner making his mark thereto in his presence, which he then and there witnessed, as he did the first paper. He testified that he was asked by Mr. Kuerschner to witness both "papers."

Dr. Young further testified that, at the time of the execution of the orders mentioned, Kuerschner was perfectly rational, and, in answer to different questions propounded to him by the court and the counsel for the appellee, he testified that at such time Kuerschner "was mentally able to execute a valid deed, will or contract," or "an order on a savings bank to transfer funds," and when asked by the counsel for the appellant if he would say that Kuerschner on December 4th, two days before his death, "had the mental capacity to understand and comprehend the creation of a trust fund in his own name, for his own benefit and also for the benefit of Theodore Leonhardt," his reply was, "Yes, sir." "You think he would be able to comprehend what that was all about? A. Yes, sir." In addition thereto, Mrs. Leonhardt, who had been with Kuerschner for nearly one year, living in the same house with him and administering to his wants and needs, and who was present at the execution of the orders, testified that in her opinion "he certainly was in perfect mind to know what he was doing and what he wanted done." It was also testified to by Langham, a son-in-law of Leonhardt, that at the time of the execution of the paper attested by him, which directed how the money withdrawn by Leonhardt should be redeposited in bank, "Dr. Young called me in the room and he read that paper awful loud and Mr. Kuerschner put his X mark on there and Dr. Young said, "is this what you want, pap,' and he says 'yes, that is what I want, and then Theodore gets what I got when I am gone.' So I looked at it and signed my name and handed it back to Doctor Young and he signed it and I left the room." And when asked, "Did Mr. Kuerschner respond intelligently to the questions which were asked him on that occasion?' he answered without objection, "Yes, sir, he was all right."

156

The evidential effect of the facts that the orders were signed on the 3rd and 4th of December, respectively, only three and two days before the death of Kuerschner, and the withdrawal of the money on deposit by Leonhardt, on the day of the death of Kuerschner, is certainly overcome by the testimony of the doctor and others as to Kuerschner's mental condition at the time of the execution of the orders, and the testimony of Leonhardt, wherein he explains why he withdrew the money from bank so soon after the death of Kuerschner, by saying: "I went down there and got that money out (of the bank) and redeposited (it) in the joint account of my name and my wife's, so she could have access to it, and pay bills we had contracted in regard to his (Kuerschner's) death and those things.

The learned chancellor below, who saw and heard the witnesses when testifying, we think, committed no error in the conclusion he reached upon the evidence produced, and we will therefore affirm the decree appealed from, dismissing the bill.

*Decree affirmed, with costs.*